IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Cecil Jarrett, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:13cv542 (GBL/TCB) |
| | ) | |
| Howard Clarke, | ) | |
| Respondent. | ) | |

MEMORANDUM OPINION

This Matter comes before the Court on respondent's Motion to Dismiss this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed pro se by Cecil Jarrett, a Virginia inmate. Petitioner challenges the constitutionality of his convictions of possession with intent to distribute heroin and felony child neglect following a jury trial in the Circuit Court of York County. After respondent moved to dismiss the petition, Jarrett was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K), and he filed a response captioned as a Motion of Response Ple[a]ding. Dkt. 16. After careful consideration, for the reasons that follow, respondent's Motion to Dismiss will be granted, and the petition will be dismissed with prejudice.

I. Background

On June 3, 2010, a jury in York County found petitioner guilty of one count of possession with intent to distribute heroin, third offense, and one count of felony child neglect. Case Nos. CR10-6082-01 and -02. Pursuant to the jury's recommendation, the court sentenced petitioner to ten (10) years in prison for the drug conviction and two (2) years for child neglect, for a total

1

period of twelve (12) years incarceration. The facts underlying the convictions were described by the Virginia Court of Appeals as follow:

> [T]he evidence proved that on July 13, 2009, Christopher Herndon agreed to assist the police in making a controlled drug purchase. Herndon contacted appellant and sought to purchase twenty bundles of heroin. Herndon agreed to purchase fourteen bundles, which was all the heroin appellant had, for two hundred dollars. Herndon traveled to the agreed-upon location with Officer D. Tyree. Appellant approached the vehicle and knocked on the window. Tyree identified appellant as the man who came to the car. Herndon exited the vehicle, and Tyree observed the two men engage in a hand-to-hand transaction. Herndon returned to the car and gave the officer the heroin he had just purchased. Other officers immediately approached appellant. He had entered the backseat of a waiting car, and the same money the police had given to Herndon to conduct the buy was on the seat next to appellant. Appellant's eight-year-old child was also in the car.
>
> Appellant admitted accepting the money from Herndon in the parking lot but claimed the money was for payment of funds Herndon owed him.

Jarrett v. Commonwealth, R. No. 2048-10-1 (Va. App. Mar. 16, 2011, slip op. at 1-2; Resp. Ex. A.

Jarrett prosecuted a direct appeal, raising the sole claim that the evidence was insufficient to sustain both convictions where the Commonwealth's evidence was based in whole on the testimony of a convicted felon who had made conflicting statements. Resp. Ex. A, Pet. for App. at 3. A judge denied the petition for appeal on March 16, 2011. Jarrett v. Commonwealth, supra. A three-judge panel reached the same result on May 27, 2011. Resp. Ex. A. Petitioner sought further review by the Supreme Court of Virginia, but his petition was refused. Jarrett v. Commonwealth, R. No. 111105 (Va. Oct. 12, 2011); Resp. Ex. B.

In July, 2012, Jarrett filed a petition for a state writ of habeas corpus in the Supreme Court of Virginia. Petitioner specified no claims on the face of the form petition, although in

response to the request that he list each ground that had not been previously presented to a court, he wrote without further explanation, "Ineffective assistance can only be brought via writ of habeas corpus." Pet. at 6. Appended to the form petition was a document petitioner captioned as a "Memorandum of Law" in which he raised the sole claim that he was denied a fair trial because the prosecutor knowingly used false or perjured testimony. On January 14, 2013, the Supreme Court of Virginia granted the Commonwealth's motion to dismiss the petition. Specifically, the Court held that the claim that petitioner was deprived of a fair trial was barred because it had been raised and decided in the trial court and on direct appeal, and so could not be raised in a habeas petition. The order made no mention of a separate claim of ineffective assistance of counsel. Jarrett v. Dir., Dep't Of Corrections, R. No. 121220 (Va. Jan. 14, 2013).

Jarrett timely filed the instant application for § 2254 relief on or about May 1, 2013,[1] reiterating the claim that he was deprived of a fair trial by the Commonwealth's knowing use or false or perjured testimony. On September 19, 2013, respondent filed a Rule 5 Answer and a Motion to Dismiss, along with a supporting brief and exhibits. Petitioner filed a reply on October 4, 2013. Accordingly, the petition is now ripe for disposition.

## II. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudication is contrary to, or an unreasonable application of, clearly established federal law, or based on an

---

[1] For federal purposes, a pleading submitted by an incarcerated litigant generally is deemed filed when the pleading is delivered to prison officials for mailing. Lewis v. City of Richmond Police Dep't, 947 F.2d 733 (4th Cir. 1991); see also Houston v. Lack, 487 U.S. 266 (1988). In this case, however, petitioner failed to sign or date the petition he submitted to the Court, so the date it was received by the Clerk is indicated here.

unreasonable determination of the facts. 28 U.S.C. § 2254(d). Whether a state court decision is "contrary to" or "an unreasonable application of" federal law requires an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one. Id. at 410. Under this standard, "[t]he focus of federal court review is now on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." McLee v. Angelone, 967 F.Supp. 152, 156 (E.D. Va. 1997), appeal dismissed, 139 F.3d 891 (4th Cir. 1998) (table).

### III. Analysis

Petitioner makes the same claim in this federal proceeding that he pursued on direct appeal - namely, that his right to a fair trial was violated because the Commonwealth knowingly used the false testimony of Christopher Herndon to procure his convictions.[2] Petitioner bases his argument on a notarized letter Herndon wrote on March 5, 2010, while confined at the Virginia Peninsula Regional Jail ("VPRJ"). In the letter, Herndon acknowledged that he was the

---

[2]The respondent acknowledges that the claim at issue was properly exhausted in the state forum. See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

4

person to whom petitioner "supposedly" sold the drugs, but that:

> ... their [sic] was no drug transaction at that time. The meeting between myself and Mr. Jarrett was strictly a matter of him receiving owed money from myself. In exchange for that money I had received a tattoo from one of Mr. Jarrett's friends at a previous time. I simply gave him the money for that service, anything else not regarding that transaction I had no knowledge of. I am having this letter notarized so that the concerned understands that I, Christopher Herndon, had wrote this letter and was not forced or threatened in any shape or form into giving this information. Thank you for your time and I hope this information is considered in the final disposition of Mr. Jarrett's case.

Resp. Ex. E.

The question of Herndon's veracity was explored extensively at trial. During opening statement, the prosecutor informed the jury that Herndon was a convicted felon and a heroin addict. T. 21. Herndon testified that his only consideration for testifying against petitioner was the assurance of his safety. T. 31. He admitted that he was arrested for grand larceny on July 13, 2009, and that he offered assistance to the police department to help his legal predicament. T. 32-34. He then recounted the events of the transaction in which petiotner sold him heroin in exchange for money the police had provided. T. 35-37. Herndon stated that he was searched by a police officer before he made the drug purchase, and he provided a written statement to the police after the transaction was concluded. T. 38; Resp. Ex.D.

Detective Deluca of the Poquoson Police Department testified that he listened to Herndon's side of a telephone conversation with Jarrett in which Herndon requested two bundles of heroin. T. 78. The car Herndon drove to the scene was wired, and Trooper Tyree was seated in the vehicle. T. 81-82. Detective Deluca gave Herndon $200 of police funds after photocopying the actual bills, and the money he recovered money from Jarrett's car after the

transaction was completed consisted of those same bills. T.85-87. Trooper Tyree watched a hand-to-hand transaction take place between Herndon and Jarrett, and at its conclusion Herndon returned to the car and gave Trooper Tyree the heroin. T.107-08. Police officers immediately arrested Jarrett, and Detective Deluca seized his cell phone and confirmed that Herndon had called him earlier in the evening. T.98-99.

Herndon was questioned extensively about the letter on which petitioner now relies, which was introduced at trial as a defense exhibit. Herndon testified that when he wrote the letter he and Jarrett were housed in adjoining pods at VPRJ. T. 40. Jarrett asked Herndon if Herndon was planning to testify against him, and out of fear for his safety Herndon said he would not. T.41-42. Jarrett asked Herndon to write a letter to Jarrett's counsel claiming that the money they exchanged was to pay for a tattoo Herndon had received, and Herndon complied. T.42. Herndon acknowledged that he wrote the letter and had it notarized, but stated that the contents were untrue. T. 42, 46. Earlier in the week of the trial Herndon had informed his lawyer of the letter, and the evening before trial he met with Detective Deluca, his own lawyer, and the prosecutor in Jarrett's case. T.43-45. He acknowledged that the grand larceny charge for which he had been arrested on July 13, 2009 had been reduced to petit larceny, and that it would be dropped altogether if he maintained good behavior for six months and cooperated with the Commonwealth. T. 45. It had been agreed that after he provided testimony at Jarrett's trial he would not be returned to VPRJ for his safety. T.45-46.

On cross examination, Herndon admitted that he was a three-time convicted felon and had a revocation proceeding pending. T. 55, 68. Herndon acknowledged that he did not tell the notary at VPRJ that he had been forced to write the letter on Jarrett's behalf, and that when he

met with petitioner's lawyer he had said that the contents were true. T.47-50, 69. d

Defense counsel also called the jail notary as a witness, and he testified that Herndon did not appear nervous or reluctant when he asked that the letter be notarized. T. 138. Counsel's closing argument focused on Herndon and the letter, and he suggested to the jury to that Herndon saw Jarrett as a "big key to his jail cell." T.175-78.

When the claim at issue was presented on direct appeal, the Court of Appeals of Virginia found as follows:

> Although appellant asserts 'the Commonwealth's evidence was based in whole on the testimony of a convicted felon who had made conflicting statements,' in fact, the Commonwealth also presented evidence demonstrating Herndon did not possess any heroin until immediately after his encounter with appellant. Furthermore, appellant's cellular telephone indicated he had received a call from Herndon earlier that evening. Police were present during the call and heard Herndon arrange to purchase narcotics. Finally, Herndon testified he was coerced by appellant into making inconsistent accounts of the events. The evidence fully supports the jury's conclusion that appellant distributed the drugs and possessed the narcotics in the presence of his child. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of possession of heroin with the intent to distribute and felony child neglect.

Jarrett v. Commonwealth, supra, slip op. at 2-3. Because the foregoing order was the last reasoned state court decision on the claim at issue, its reasoning is imputed to the Supreme Court of Virginia, which refused further appeal without explanation. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

On federal habeas review, the standard for a claim challenging the sufficiency of the evidence supporting a state conviction is "whether, after viewing the evidence in the light most

favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis original). The federal court is required to give deference to findings of fact made by the state courts, and this presumption of correctness applies to facts found by both trial and appellate courts. 28 U.S.C. § 2254(d); Sumner v. Mata, 449 U.S. 539, 546-47 (1981); see Wilson v. Greene, 155 F.3d 396, 405-06 (4th Cir. 1998) (citing Wright v. West, 505 U.S. 277, 292 (1992) for the holding that a federal habeas court is prohibited from either "consider[ing] anew the jury's guilt determination or "replac[ing] the state's system of direct appellate review"). Moreover, it is not the role of a federal court to review the credibility of witnesses. United States v. Hobbs, 136 F.3d 384, 391 n.11 (4th Cir. 1998); United States v. Reavis, 48 F.3d 763, 771 (4th Cir. 1995); United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). Instead, the federal court is bound by credibility determinations made by the state court trier of fact. United States v. Arrington, 719 F.2d 701, 704 (4th Cir. 1983). In short, the federal court must determine only whether the trier of fact made a rational decision to convict. Herrera v. Collins, 506 U.S. 390, 402 (1993).

In this case, petitioner's argument regarding the sufficiency of the evidence is no more than an invitation to this Court to re-weigh the evidence in a manner more favorable to him, a course of action which plainly is prohibited by the foregoing authorities. Specifically, this Court may not revisit the issue of Herndon's credibility in this proceeding, Reavis, 48 F.3d at 771, and for the reasons expressed by the Courts of Appeals, it is apparent that a rational trier of fact could have found Jarrett guilty of both offenses charged based on the evidence presented. As Jarrett thus has failed to satisfy his burden of showing that the rejection of his claim by the Virginia

Court of Appeals was either an unreasonable determination of the facts or an unreasonable application of federal law, that result must be allowed to stand. Williams, 529 U.S. at 412-13.

Lastly, it is unclear whether petitioner intended his statement that "ineffective assistance can only be brought via writ of habeas corpus," Pet. at 6, to state an independent claim of ineffective assistance of counsel. If so, at this juncture such a claim is procedurally defaulted frm federal review. No claim of ineffective assistance was exhausted in the state courts. Cf. Matthews v. Evatt, 105 F.3d 907, 910-11 (4th Cir. 1997)(in Virginia, a claim to be cognizable under § 2254 must first have been presented to the Supreme Court of Virginia either by way of a direct appeal, a state habeas corpus petition, or an appeal from a circuit court's denial of a state habeas petition). Moreover, an ineffective claim is now incapable of exhaustion, because it would be successive. Va. Code § 8.01-654(B)(2). Therefore, if petitioner did intend to bring a claim of ineffective assistance of counsel, the claim is simultaneously exhausted and defaulted for purposes of federal habeas review. See Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990).

## V. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss this petition for habeas corpus relief will be granted, petitioner's Motion of Response will be denied, and the petition will be dismissed with prejudice. An appropriate Order shall issue.

Entered this 18th day of April 2014.

Alexandria, Virginia

/s/
Gerald Bruce Lee
United States District Judge